## 36346. COUNTRY CLUB APARTMENTS, INC. v. SCOTT.

MARSHALL, Justice.

In *Country Club Apts. v. Scott,* 154 Ga. App. 217 (267 SE2d 811) (1980), the Court of Appeals held that the landlord's implied warranty, that the rented premises were in good repair at the time they were rented, cannot be defeated by an exculpatory provision in the lease. The Court of Appeals' affirmance of the trial court's denial of the appellant's motion for judgment on the pleadings is a type of ruling on which certiorari is not normally granted under our Rule 29 (2) (242 Ga. 1006). Because of the importance of the issue involved and the state of confusion of the law thereon, as illustrated by the split vote in the Court of Appeals, however, we granted certiorari.

Four judges in the "majority" opinion *purportedly* overruled the line of cases holding that a landlord can exculpate himself from damages occurring to the person or property of a tenant during the period of the lease as a result of ordinary negligence on the part of the landlord, i.e., *Ragland v. Rooker,* 124 Ga. App. 361 (183 SE2d 579) (1971); *Camp v. Roswell Wieuca Court Apts.,* 127 Ga. App. 67 (192 SE2d 499) (1972); *Akin v. Hardeman-Long Corp.,* 129 Ga. App. 303 (199 SE2d 621) (1973); *Sport Shop, Inc. v. Churchwell,* 131 Ga. App. 718 (206 SE2d 715) (1974); *Smith v. General Apt. Co.,* 133 Ga. App. 927 (213 SE2d 74) (1975); *Tek-Aid, Inc. v. Eisenberg,* 137 Ga. App. 99 (223 SE2d 29) (1975). However, since the special concurrence (which completes the true majority vote) declined to overrule the above cases, the cases are not overruled in spite of the language of the four-judge opinion. The further fragmentation of that court on this issue is illustrated by the two separate dissenting opinions.

In our opinion, the present issue is one of public policy, on which the General Assembly is the proper spokesman and on which it has in

fact spoken. In 1970, just prior to the onset of the spate of cases cited hereinabove, the General Assembly enacted Code Ann. § 20-504 (Ga. L. 1970, p. 441), which provides in part: "A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure, appurtenances and appliances . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable . . ." That this statute was applicable to exculpatory clauses in lease contracts was specifically established by this court in *Frazer v. City of Albany,* 245, Ga. 399 (2) (265 SE2d 581) (1980).

In spite of this 1970 legislative statement of policy, exculpatory clauses in lease contracts continued to be approved by the Court of Appeals, as in the cases cited hereinabove. Although it is true that the General Assembly can acquiesce in court interpretations of its enactments by failing or declining to amend them so as to clarify its true intention, such was not done in regard to the present issue. In 1976, after all of the above cases had been decided, the General Assembly substantially rewrote Code § 61-102, thereby reenforcing its earlier pronouncement in Code Ann. § 20-504, supra, and making it clear that it applied specifically to the landlord-tenant relationship. Code Ann. § 61-102 (as amended, Ga. L. 1976, pp. 1372, 1373, eff. July 1, 1976) provides in part: "(b) A landlord or tenant may not waive, assign, transfer, or otherwise avoid in any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling-place any of the rights, duties, or remedies contained in the following provisions of law, as now or hereafter amended: (1) Section 61-111, relating to duties of a landlord as to repairs and improvements. (2) Section 61-112, relating to the liability of a landlord for failure to repair."

While the specially concurring and dissenting judges on the Court of Appeals were understandably adamant in their position that the *court* should not drastically change the longstanding law of Georgia by the overruling of the various cases mentioned so as to create public policy different from that already established, it is apparent from our preceding analysis that the General Assembly — the propounder of public policy — has already declared the new public policy by the aforesaid enactments in 1970 and 1976, and the judiciary, up until now, has simply failed to give effect to this policy in its decisions.

Accordingly, we affirm the judgment of the Court of Appeals

upholding the denial of the appellant's motion for judgment on the pleadings, and expressly overrule all cases which are in conflict with the public policy set forth in the aforementioned 1970 and 1976 statutory enactments, including those specifically referred to in the Court of Appeals' "majority" opinion, plus *Jaffe v. Davis,* 134 Ga. App. 651 (215 SE2d 533) (1975); *F. P. Plaza, Inc. v. Sugrue,* 144 Ga. App. 543 (1) (241 SE2d 644) (1978), and any other cases to like effect.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 9, 1980 — DECIDED OCTOBER 1, 1980.

*Ronald W. Self,* for appellant.
*Harry Dicus,* for appellee.