*Michael G. Frick,* for appellees.

### 64136. BARNES v. PEARMAN et al.

McMurray, Presiding Judge.

On March 15, 1979, S. Grantland Barnes, as lessor, entered into a lease agreement with Joe R. Pearman, as lessee, with reference to the first floor of a building to house a Minute Man Press franchise printing shop. The agreement was negotiated by a representative of Minuteman Press International, Inc. on Pearman's behalf. The lease agreement contained an exculpatory and indemnity provision as follows: "Lessee hereby releases Lessor from any and all damages to both person and property and will hold the Lessor harmless from such damages during the terms of this lease." The lease agreement required Barnes to make additional modifications to the building, some of which were electrical in nature. Davis performed these modifications and eventually Pearman commenced operation of the business in the leased premises.

On or about May 27, 1980, a fire occurred in the building and there is some question as to its cause, that is, by an electrical short or due to defective electrical circuitry resulting from the electrical modification.

Pearman, d/b/a Minute Man Press, together with Compu-graphic Corporation and Minnesota Mining and Manufacturing Company, both having leased certain equipment to Pearman, sued Davis, who installed the electrical modifications and Barnes, the lessor, for damages resulting to lessee's business and to the equipment leased by plaintiff Pearman for use in the business. The suit was in four counts.

The defendants answered separately, in substance, denying the claim. Defendant Barnes' answer contained a defense that plaintiff Pearman had released and indemnified him from all claims asserted in this complaint by virtue of the release and indemnity clause in the lease. By counterclaim the defendant Barnes pleaded the lease clause of indemnification setting forth that if he were held liable as to the other plaintiffs he would be entitled to judgment against the plaintiff Pearman for any sum or sums which might be adjudged in favor of the other plaintiffs. He also filed a cross-claim against defendant Davis that if he were held liable to the plaintiffs, or any of them, in any sum or sums whatsoever, then this defendant would be entitled to judgment over against the other defendant, Davis.

After discovery plaintiff Pearman moved for partial summary judgment with reference to defendant Barnes' defense as to the

exculpatory clause allegedly insulating Barnes from all liability. Defendant Davis and defendant Barnes separately also moved for summary judgment. After a hearing plaintiff Pearman's motion for partial summary judgment was granted, the trial court holding that a new public policy had been created declaring the exculpatory clause attempting to insulate the lessor from liability as void and unenforceable, citing Code Ann. §§ 20-504 (Ga. L. 1970, p. 441) and 61-102 (Ga. L. 1976, pp. 1372, 1373) and *Country Club Apts. v. Scott,* 246 Ga. 443, 444 (271 SE2d 841), thus striking the defendant lessor's third defense of indemnity. The court denied defendant Davis' motion holding that an issue of fact remained for determination as to whether or not the electrical modifications caused the resulting fire damage. Defendant Barnes' motion for summary judgment was denied as his defense of contractual release was not meritorious. The defendant Barnes appeals the judgment holding the release and indemnity clause contained in the lease void as against public policy. *Held:*

Plaintiffs contend that having brought suit, inter alia, against the lessor for the breach of an implied warranty that the leased premises were fit for the use intended and free from latent defects, the exculpatory clause in the lease was properly held to be void and unenforceable as against the public policy of the state. Plaintiffs argue that such provisions which would excuse such a person from his own negligence have never been favored in this state, even in a commercial setting and such provisions are strictly construed, citing *Covington v. Brewer,* 101 Ga. App. 724, 725 (3), 729-731 (115 SE2d 368). Further, a new public policy has been enacted in Georgia by and through the General Assembly with the enactment of Code Ann. §§ 20-504 and 61-102, supra, the same applying to commercial leases as well as residential landlord and tenant relationships. With reference to the above "new public policy" by the new statutes (adopted in 1970 and 1976) the Supreme Court in *Country Club Apts. v. Scott,* 246 Ga. 443, 444, supra, affirmed the split decision of the Court of Appeals in *Country Club Apts. v. Scott,* 154 Ga. App. 217 (267 SE2d 811), wherein this court attempted to overrule a number of cases involving both commercial leases as well as residential. The Supreme Court also expressly overruled all cases in conflict with the public policy set forth in the aforementioned 1970 and 1976 statutory enactments as well as those cases referred to by this court as being overruled "and any other cases to like effect." Clearly, Code Ann. § 61-102, supra, applied to landlord and tenant relationships with reference to the use or rental of real property "as a dwelling place." However, Code Ann. § 20-504, supra, declared the public policy with reference to a covenant, promise, agreement or understanding in, or in connection with or

collateral to a contract or agreement relative "to the construction, alteration, repair or maintenance of a building structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee" to be against public policy and void and unenforceable. The defendant seeks to argue that the statute does not apply to commercial leases, and a different result should obtain to them as the litigation involved in *Country Club Apts. v. Scott,* supra, applied only to a landlord and tenant relationship with regard to a dwelling place. Nevertheless, it is quite clear that the Supreme Court in its affirmance of the Court of Appeals in *Country Club Apts. v. Scott,* 246 Ga. 443, 444, supra, interpreted the new public policy by the enactments in 1970 and 1976 as applying to all such leases. Consequently, we think the attempt to differentiate the lessor-lessee relationship for a term of five years, conveying an estate for years rather than a usufruct, from that of the landlord and tenant relationship considered in the *Country Club Apts. v. Scott* case is not well taken. In the recent case of *Burson v. Copeland,* 160 Ga. App. 481, 482-483 (2) (287 SE2d 386), this court set forth that "it is apparent that the Supreme Court intended to strike down exculpatory clauses in all leases, including commercial leases," as certain cases of the Court of Appeals involving commercial leases "were expressly overruled by the Supreme Court." The trial court did not err in granting the partial summary judgment here. The case of *Deese v. Parks,* 157 Ga. App. 116, 118 (276 SE2d 269), also citing *Country Club Apts. v. Scott,* 246 Ga. 443, supra, and setting forth that the situation in that case did not pertain to *Deese v. Parks,* supra, is inapposite here.

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED SEPTEMBER 9, 1982 —
REHEARING DENIED OCTOBER 8, 1982 —

C. Wade McGuffey, Jr., Elmer L. Nash, for appellant.
I. J. Parkerson, Michael L. Wetzel, Tom E. Lewis, Howard P. Wallace, for appellees.